J-A33045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.M.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.A., BIRTH MOTHER | No. 1782 EDA 2014 |

Appeal from the Decree May 16, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No.: CP-51-AP-0000326-2011

BEFORE: LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED JANUARY 08, 2015**

L.A. ("Mother") appeals the May 16, 2014 decree that involuntarily terminated her parental rights to her son, L.M.A. ("Child"). After careful review, we affirm.

The record supports the following summary of the factual and procedural history. Mother and M.W. ("Father") began a romantic relationship. Father was married at that time. Child was born in July 2010. Mother also had a then-four-year-old child with another man.

While pregnant with Child, Mother contacted Adoptions from the Heart ("AFTH"), a child placement agency. Mother told the adoption counselor, Michaelina Bendig, that the father of her child was a musician that she had met in New Orleans and that Mother did not know his name or have contact

---

[*]     Retired Senior Judge assigned to the Superior Court.

information. Prior to Child's birth, Mother went to two counseling sessions and selected an adoptive family.

When Child was born, Mother notified AFTH and Mother transferred custody to AFTH. Child then was placed with an adoptive family. Mother, however, did not sign the consent forms for the adoption, and, after six days, Child was returned to Mother's custody.

While Child was in Mother's custody, Father spent some time with Child. Mother continued to contact AFTH to discuss adoption. Ms. Bendig also discussed parenting techniques with Mother. Ms. Bendig was concerned about adoption because Child was getting older and Ms. Bendig was concerned about the impact on Mother's other child if Child were removed from the home. However, Mother selected S.P. and A.H. ("Adoptive Family") to adopt Child. On May 24, 2011, Mother signed a consent to adopt. Mother also signed an affidavit stating that she was unaware of the identity of Child's birth father. On May 25, 2011, Adoptive Family took physical custody of Child. On July 26, 2011, they filed a petition for adoption. During the thirty-day period during which Mother could revoke her consent, she did not do so. However, after that period expired, Mother attempted to revoke her consent.

In August 2011, Father contacted AFTH's counsel and alleged that he was Child's biological father. Counsel instructed Father to arrange a paternity test. In the meantime, Ms. Bendig attempted to contact Mother to inquire about Father's claim. Mother did not return Ms. Bendig's telephone

call.    On  September  19,  2011,  Father  contacted  the  AFTH  regional supervisor, Jeanne Magee, to inquire about the paternity test.  The paternity test proved that Father was Child's biological father.

On September 13, 2011, AFTH filed a petition to confirm Mother's consent, a petition to involuntarily terminate Father's parental rights, and a petition to involuntarily terminate the unknown father's parental rights.  On April 4, 2012, AFTH filed a petition to involuntarily terminate Mother's parental rights.  The trial court held hearings on the petitions on June 6, 2012, June 13, 2012, and February 13, 2013.  On May 16, 2014,[1] the court issued decrees involuntarily terminating Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).   The court also confirmed Mother's consent.  On June 13, 2014, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]

In her 1925(b) statement, Mother raised three issues.   Mother challenged    the    trial    court's    conclusion    that    section    2511(a)(1)'s requirements had been proven, Mother asserted that her due process rights

_____

[1]    The record does not indicate the cause of the delay between the initial hearings and the court's decree.  However, Mother and Father each changed counsel between the June 13, 2012 and the February 13, 2013 hearings. Additionally, it appears that Mother's counsel did not file proposed findings of fact and conclusions of law until February 24, 2014.

[2]    Father also filed a notice of appeal.  That appeal was docketed at 1767 EDA 2014 and is disposed of in a separate memorandum.

had been violated in the termination of her parental rights, and Mother contended that the court erred in failing to find that she had revoked her consent. Concise Statement of Matters Complained of on Appeal, 6/13/2014. However, Mother has since conceded that her first and third issues "are not viable" and she withdrew them. Mother's Brief at 5. Therefore, only one issue remains for our review:

> Did the Court err in ruling for termination of parental rights in a manner that violated the Due Process Rights of both parents under the Constitution of the United States of America?

Mother's Brief at 4.

While framed broadly, Mother argues narrowly that her procedural due process rights were violated because she was not given proper notice of her right to revoke her consent to the adoption, specifically notice was not given of the sixty-day period during which a birth parent may revoke consent due to fraud or duress. Mother concedes that the governing statute does not require that she be informed of that sixty-day period. Mother also concedes that she never claimed fraud or duress. Despite that, Mother avers that, because AFTH did not inform her of this sixty-day period, she did not receive adequate notice and her due process rights were violated. Mother's Brief at 11-17.

While Mother challenges her consent to adopt, the trial court both confirmed Mother's consent to adopt and involuntarily terminated Mother's parental rights. The court engaged in two separate and distinct analyses.

The Adoption Act contemplates that if parental rights are terminated involuntarily, then consent is not required:

> Consent of a parent to adoption shall not be required if a decree of termination with regard to such parent has been entered. When parental rights have not previously been terminated, the court may find that consent of a parent of the adoptee is not required if, after notice and hearing as prescribed in section 2513 (relating to hearing), the court finds that grounds exist for involuntary termination under section 2511 (relating to grounds for involuntary termination).

23 Pa.C.S.A. § 2714. Therefore, even if we were to find that Mother's due process rights were violated in the way asserted, the trial court decision stands upon a separate basis that Mother has not challenged. Thus Mother's lone claim before this Court, even if meritorious, cannot change the outcome of the case and we must affirm.

Even if we were to reach the merits of Mother's claim, the consent form she signed comports with the law. *See* 23 Pa.C.S.A. § 2711. Further, the record is ample to support the finding that Mother was informed of the time period in which she could revoke her consent. Notes of Testimony ("N.T."), 6/6/2012, at 77-78, 96-100, 145-46, 156-57; N.T., 2/13/2013, at 84. As Mother notes, there is no requirement that the consent form contain information about the sixty-day deadline to revoke consent in cases of fraud or duress and Mother has not claimed that either occurred.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/8/2015